# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

| | |
|---|---|
| **CASE NAME:** USA v. Warren Herman Sloan | **CASE NUMBER:** CR |
| **Is This Case Under Seal?** | Yes ✔   No |
| **Total Number of Defendants:** | 1 ✔   2-7     8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes   No ✔ |
| **Venue (Per Crim. L.R. 18-1):** | SF ✔   OAK   SJ |
| **Is this a potential high-cost case?** | Yes   No ✔ |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes   No ✔ |
| **Is this a RICO Act gang case?** | Yes   No ✔ |
| **Assigned AUSA (Lead Attorney):** Ross Weingarten | **Date Submitted:** 8/25/2021 |
| **Comments:** | |

Form CAND-CRIM-COVER (Rev. 11/16)

RESET FORM     SAVE PDF

AO 91 (Rev. 11/11)   Criminal Complaint

**FILED**
Aug 25 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| Warren Herman Sloan | ) Case No. 3-21-mj-71336 MAG |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **March 29, 2021** in the county of **Humboldt** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846, 841(a)(1) and (b)(1)(C) | Attempt to Distribute and Possess with Intent to Distribute Narcotics, to wit, Fentanyl |
| | Maximum 20 Years' Imprisonment; Maximum Fine of $1 million; Maximum term of Supervised Release of life; Mandatory $100 Special Assessment |

This criminal complaint is based on these facts:

Please see attached affidavit of FBI Special Agent Stephen J. Soli, Jr.

☐ Continued on the attached sheet.

s/
*Complainant's signature*

Approved as to form _____/s/_____
AUSA __Ross Weingarten_____

Stephen J. Soli, Jr., FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 8/25/2021

*Judge's signature*

City and state: San Francisco, California    Hon. Joseph C. Spero, Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF
# SPECIAL AGENT STEPHEN J. SOLI, JR.
# IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Stephen J. Soli, Jr., Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby declare as follows:

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

1.  This Affidavit is being submitted in support of an application for a criminal complaint and arrest warrant charging **WARREN HERMAN SLOAN ("SLOAN")** with attempt possession with intent to distribute narcotics, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C).

2.  The facts and information set forth in this affidavit are based on my personal observations, review of records and images, my training and experience, and, as specifically attributed below, information obtained from law enforcement officers and witnesses. To the extent that any information in the affidavit is not within my personal knowledge, it has been made available to me through reliable law enforcement sources, and I believe such information to be true.

3.  Because this affidavit is submitted for the limited purpose of demonstrating probable cause for the issuance of a criminal complaint and arrest warrant for SLOAN, I have not included each and every fact known to me concerning this case. Rather, I have set forth only those facts that I believe are necessary to support the criminal complaint and lawful arrest of the individual listed in this Affidavit.

4.  Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this affidavit, such information is also described in sum and substance and in relevant part.

## AGENT'S BACKGROUND AND EXPERTISE

5.  I am a Special Agent of the FBI and have been so employed since March of

2004. I have been assigned to the Eureka Resident Agency of the San Francisco Division of the FBI since November of 2016. While employed by the FBI, I have investigated federal criminal violations related to national security, white-collar crime, public corruption, drug-related offenses and violent crime. As a federal law enforcement agent, I am authorized to seek and obtain search warrants, arrest warrants and investigate violations of federal laws including Title 21, United States Code, Sections 841(a)(1) and 846 (drug trafficking).

## APPLICABLE LAW

6.      Title 21, United States Code, Section 841(a)(1) makes it unlawful for any person to knowingly distribute or possess with intent to distribute a controlled substance.

7.      Title 21, United States Code, Section 846 makes it unlawful for any person to attempt to distribute or possess with intent to distribute a controlled substance.

## FACTS ESTABLISHING PROBABLE CAUSE

8.      On March 5, 2021, law enforcement officers on the Humboldt County Drug Task Force ("HCDTF") learned that a 19-year-old female, "S.L.", died on the Hoopa Reservation of an apparent accidental drug overdose.  S.L.'s family believed she ingested a counterfeit "perc-30" pill containing Fentanyl, which caused her to overdose.  I know, based on my training and experience, that counterfeit pharmaceutical pills are manufactured to look like legitimate prescription pills such as Percocet, but are often laced with Fentanyl, which makes them extremely dangerous to the user.  In recent years, counterfeit pharmaceutical pills laced with Fentanyl have caused numerous overdose deaths in the Northern District of California and throughout the United States.

9.      Central Valley Toxicology, Inc. performed a toxicology exam on S.L. using a sample of S.L.'s blood.  The exam detected 26 ng/mL of Fentanyl present at the time of her death.  The toxicology report states that 3-10 ng/mL of Fentanyl in a person's body is "Potentially Toxic."  In other words, S.L. had well over double the amount of Fentanyl in her system that is considered to be toxic.  As a result, the cause of death was determined to be Fentanyl overdose.  S.L.'s body was also found to have alcohol in her system, which was listed

in the toxicology exam as a contributing factor to her death.

10. As part of the investigation into S.L.'s death, the HCDTF spoke with individuals on the Hoopa Reservation and learned that three individuals were suspected of selling counterfeit "perc-30" pills on the Hoopa Reservation, one of whom was SLOAN.

11. Separately, through the use of a Confidential Human Source ("CHS")[1], Humboldt County law enforcement identified Anthony Medina ("Medina") as the source of supply of the "perc-30" pills to SLOAN and the other traffickers in the Hoopa Valley. The CHS informed law enforcement that the CHS had been present when individuals in Humboldt County purchased pills from Medina.

12. The CHS provided law enforcement with a phone number for Medina and told law enforcement that Medina travelled out of the area to pick up large quantities of pills. Sgt. Tomlin conducted record checks on the phone number provided, which confirmed that the number was registered to Medina. Sgt. Tomlin then authored a state Cell Site Location Information "Ping" warrant for Medina's phone. The warrant was signed by the Honorable Judge Greg Elvine-Kreis in the Superior Court of California, County of Humboldt. The Ping on the cell phone was activated on March 27, 2021.

13. On March 27, 2021, law enforcement monitored Medina's cell phone and saw that it travelled south from Eureka, California to the Chico, California, area. On March 28, 2021, the cell phone ping left the Chico area and travelled to San Jose, California. It remained

---

[1] CHS initially provided information to HCDTF for monetary gain. In May 2021, after the events described in this Affidavit, CHS was ultimately terminated as a source by HCDTF for being untruthful in connection with a separate and unrelated investigation. CHS has a criminal record and was on active California state parole at the time he was signed up as a CHS. Prior to being terminated by HCDTF, and prior to CHS's involvement in this case, CHS had worked on two separate cases with HCDTF and had, in each instance, provided information verified by HCDTF to be accurate. In the instant case, information provided by CHS regarding Anthony Medina's phone number and travel patterns was borne out by independent law enforcement investigation (i.e., through the results of a "Ping" warrant and through law enforcement records checks). The CHS also purchased narcotics from Medina, which was verified and corroborated by law enforcement who conducted surveillance and monitored the operation. On May 27, 2021, after CHS's cooperation on this case had ended, HCDTF utilized CHS to conduct a controlled purchase of narcotics from a subject that was completely independent of this investigation. CHS had identified this subject to HCDTF as a supplier of illicit narcotics. During the operation, HCDTF officers observed CHS get into a vehicle, hold a bogus conversation representing a drug transaction when in fact he was speaking to no one, retrieve drugs from within the vehicle, and then present them to HCDTF officers as drugs purchased from the subject when in fact there was none. When confronted by HCDTF that officers had observed CHS conduct a phony transaction, CHS admitted to staging the controlled purchase. HCDTF terminated their relationship with CHS that same day.

in San Jose for a short period of time and then returned north back to Chico the same day.

14. Based on this information, law enforcement believed that Medina was travelling to San Jose to pick up narcotics from his source of supply. On March 28, 2021, Sgt. Tomlin obtained a state search warrant for the residence shared by Medina and his girlfriend, Veronica Morales-Rangel, located in Eureka, CA, as well as any vehicle under the control of Medina and Medina's person. The search warrant was signed by the Honorable Kaleb Cockrun in the Superior Court of California, County of Humboldt.

15. On March 29, 2021, the cell site location monitoring showed Medina's cell phone left Chico and started travelling north back to Humboldt County. HCDTF began surveillance and at approximately 2:45 p.m., law enforcement identified Medina as he entered Humboldt County driving a brown Mercedes Benz with paper license plates from a dealership.

16. HCDTF agents followed Medina's vehicle into a gas station parking lot, where he parked. After parking, HCDTF observed SLOAN and another individual, identified as Christian Colegrove, waiting in the parking lot. A short time thereafter, SLOAN approached Medina's vehicle. Believing Medina and SLOAN were about to conduct a drug transaction, HCDTF activated their emergency lights, exited their vehicles wearing HCDTF markings, and made contact with SLOAN, Colegrove and Medina. The three males were detained and placed into handcuffs. Veronica Morales-Rangel, who law enforcement learned is Medina's girlfriend, was seated in the backseat of the vehicle, next to a car seat in which Morales-Rangel and Medina's six-week-old infant child was seated. Prior to Morales-Rangel being allowed to hold her infant child, a fanny pack was unhooked from her waist.

17. The four adults were advised of the search warrant for Medina and his vehicle. Medina's vehicle was searched pursuant to the search warrant, and officers located in the backseat a large "Kool-Aid" container. The top 1/3 of the container contained what was believed to be actual Kool-Aid powder. However, the lower 2/3 of the container was a false compartment. Located inside the false compartment were four sandwich style bags containing a large number of pills. One of the bags was counted and contained exactly 1,000 pills. All

four bags appeared to contain the same amount of pills, totaling approximately 4,000 pills. Additionally, 1,002 pills were discovered in the fanny-pack Morales-Rangel wore around her waist. In total, approximately 5,002 pills were seized from Medina's vehicle and Morales-Rangel's fanny-pack.

18. SLOAN was searched and $1,848 in cash, along with a cellular phone, were found on his person and seized by law enforcement.

19. SLOAN was Mirandized at the site of the search and stated he did not want to talk to officers. SLOAN then said, "I did not sell [S.L.] the pill." When asked what he meant, SLOAN responded he had heard police officers were asking around Hoopa about S.L. He refused to provide any more information. When asked by law enforcement why he had approximately $1,800 in his possession, SLOAN admitted that he was going to buy pills from Medina when the officers arrived. When asked how many pills he planned to buy, SLOAN said "I'm not saying anything else."

20. On March 30, 2021, an HCDTF agent performed a TruNarc test on the samples of the 5,002 pills seized from Medina and Morales-Rangel. The pills were positive for "Fentanyl Compound or Methamphetamine," meaning both Fentanyl and Methamphetamine compounds were detected. On June 8, 2021, the results of tests performed by the Drug Enforcement Administration's Western Laboratory in Pleasanton, California, confirmed the presence of Fentanyl in each of the tested samples of the pills seized from Medina and Morales-Rangel.

21. On April 22, 2021, federal law enforcement obtained a federal search warrant for the cell phones seized at the time of the search, including the phone belonging to SLOAN. Analysis of SLOAN's phone showed a number of text messages sent between SLOAN and Medina's phone suggesting that SLOAN met with Medina on March 29, 2021 in order to purchase narcotics.

22. For example, on March 28, 2021, Medina texted SLOAN "Ight lmk how much u got" and SLOAN replied, "I got 1400 for tomorrow my boi". Approximately one minute

later, Medina texted SLOAN back, "So 100! Got u".  I believe based on my training and experience that the text message conversation on March 28, 2021 confirms that Medina intended to sell SLOAN 100 fentanyl pills.  I know from my training and experience that the attempted possession of 100 fentanyl pills is consistent with planned further distribution of the pills, not personal use.

23. On the morning of March 29, 2021, the date of the seizure of approximately 5,000 Fentanyl pills described above, Medina texted SLOAN, "Where we meeting G an have the money counted N b waiting for me I got baby n babymom wit me".  Medina continued to text SLOAN throughout the day on March 29, 2021, providing updates of his location to SLOAN.  At approximately 12:08 p.m., Medina texted SLOAN "Be ready waiting at 2:30" and SLOAN replied, "I'll bet (sic) there".  The search at the gas station commenced at approximately 2:45 p.m.  Based on my training and experience, the text message exchanged between SLOAN and Medina described above indicate that SLOAN and Medina set up and were prepared to conduct a narcotics transaction on March 29, 2021 when they met in a gas station parking lot before law enforcement intervened.

## SEALING REQUEST

24. Based on my training and experience, disclosure of the existence of this affidavit, the complaint, the arrest warrant and the related documents may cause SLOAN or other co-conspirators unknown at this time to destroy evidence or conceal ongoing criminal activity, jeopardizing the progress of the ongoing investigation. I therefore request that the Court seal this affidavit, the complaint, the arrest warrant and related documents.

//

//

//

//

//

## CONCLUSION

25. Based on the information set forth in this Affidavit, and my training and experience, I respectfully submit that there is probable cause to believe that on or about March 29, 2021, in the Northern District of California, WARREN HERMAN SLOAN attempted to possess with intent to distribute a controlled substance, to wit fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C).

Dated: August 25, 2021

                                                                                   s/
                                           Stephen J. Soli, Jr.
                                           Special Agent
                                           Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P 4.1 and 4(d) on this 25th day of August 2021.

_____
THE HONORABLE JOSEPH C. SPERO
United States Magistrate Judge